# In the United States Court of Federal Claims

BID PROTEST
No. 19-1737C
Filed Under Seal:  March 31, 2020
Reissued:  April 6, 2020[*]

_____

)
COMPUTER WORLD SERVICES    )
CORP.,                                )
                                    )
    Plaintiff,                 )
                                    )    Post-Award Bid Protest; Judgment Upon
v.                              )    The Administrative Record; RCFC 52.1;
                                  )    Injunctive Relief; RCFC 65; Motion to
THE UNITED STATES,         )    Dismiss; RCFC 12(b)(1); Waiver.
                                  )
    Defendant,              )
                                  )
v.                              )
                                  )
ALETHIX, LLC,              )
                                  )
    Defendant-Intervenor.    )
_____)

     *Jonathan J. Frankel*, Counsel of Record, *Karla J. Letsche*, Of Counsel, Frankel PLLC, Washington, DC, for plaintiff.

     *Meen Geu Oh*, Trial Attorney, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Joseph H. Hunt*, Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *John E. Cornell*, Of Counsel, United States Citizenship and Immigration Services, for defendant.

     *Jonathan M. Baker*, Counsel of Record, *Eric M. Ransom*, *Zachary H. Schroeder*, *Tyler S. Brown*, Of Counsel, Crowell & Moring LLP, Washington, DC, for defendant-intervenor.

---

[*] This Memorandum Opinion and Order was originally filed under seal on March 31, 2020 (ECF No. 41). The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order.  The parties filed a joint status report on April 3, 2020 (ECF No. 43) stating that no redactions are necessary.  And so, the Court is reissuing its Memorandum Opinion and Order, dated March 31, 2020.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.      INTRODUCTION

Plaintiff, Computer World Services Corp. ("CWS"), brings this post-award bid protest matter challenging the United States Department of Homeland Security, United States Citizenship and Immigration Services' ("USCIS") decision to exclude CWS from the competition for the award of a contract to provide certain information technology services to the USCIS. *See generally* Compl. The government has moved to dismiss this matter for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally* Def. Mot. The parties have also filed cross-motions for judgment upon the administrative record, pursuant to RCFC 52.1. *See generally* Pl. Mot.; Def. Mot.; Def.-Int. Mot. In addition, CWS has filed motions for a temporary restraining order and for a preliminary injunction. *See generally* Pl. Mot. for TRO/Prelim. Inj.

For the reasons discussed below, the Court: (1) **DENIES** the government's motion to dismiss; (2) **DENIES** CWS's motion for judgment upon the administrative record; (3) **GRANTS** the government's and Alethix, LLC's ("Alethix") cross-motions for judgment upon the administrative record; (4) **DENIES** CWS's motions for a temporary restraining order and for a preliminary injunction; and (5) **DISMISSES** the complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.      Factual Background

In this post-award bid protest, CWS challenges the USCIS's decision to exclude it from the competition for the award of a contract to provide certain information technology services to the USCIS (the "ESB Contract"), after Phase 1 of the competition. *See generally* Compl. As relief, CWS requests, among other things, that the Court declare that the USCIS's evaluation of

---

[1] The facts recited in this Memorandum Opinion and Order are taken from CWS's complaint ("Compl."); the administrative record ("AR"); CWS's motion for judgment upon the administrative record and memorandum in support thereof ("Pl. Mot." and "Pl. Mem.") and the exhibits attached thereto ("Pl. Ex."); and the government's motion to dismiss and cross-motion for judgment upon the administrative record ("Def. Mot."). Except where otherwise noted, the facts recited here are undisputed.

CWS's Phase 1 proposal was arbitrary and capricious, an abuse of discretion and contrary to the request for quotations for the procurement. Compl. at Prayer for Relief.

As background, CWS is the incumbent contractor for the last two contracts issued by the USCIS to maintain the agency's Enterprise Service Bus ("ESB"). Pl. Mem. at 2. The ESB is a combination of hardware and software that serves as the USCIS's centralized data hub and allows the agency to interconnect and share data among various document management services across the Federal Government. AR Tab 16 at 419; Def. Mot. at 2-3.

The ESB is built mainly out of a software called "TIBCO" and the ESB resides in a government-owned data center. AR Tab 15 at 414; Def Mot. at 3. The USCIS relies upon the ESB to collect information to conduct its vetting process for applications for immigration status. Def. Mot. at 2.

### 1.     The RFQ

On February 14, 2019, the USCIS issued Request for Quotation No. 70SBUR19R00000019 (the "RFQ") seeking proposals to modernize the ESB and to develop a cloud-based system through Amazon Web Services and the Enterprise Gateway and Integration Services ("EGIS"). *See generally* AR Tab 5; AR Tab 21 at 453; *see also* Def. Mot. at 3-4. The RFQ contemplates a period of performance of one year from the date of the award, with two one-year option periods. AR Tab 5 at 47.

The RFQ provides that the USCIS would conduct a two-phase evaluation process and award the ESB Contract based upon a best value determination, comprised of the "highest rated offeror with a fair and reasonable price and a tradeoff process." *Id.* at 83. The RFQ also provides that Phase 1 of the evaluation process would be based upon a technical strategy video and business volume price evaluation. *Id.*

In this regard, the RFQ provides that:

> Phase 1 is a most highly rated offer evaluation with a fair and reasonable price, and a trade-off process will not be applied. The government will evaluate Offeror's Technical Strategy Video in order to identify the most highly-rated Offerors with a fair and reasonable price. . . . The most highly rated offers, with prices determined to be reasonable in Phase 1, will be invited to participate in Phase 2.

*Id.* The RFQ also provides that Phase 2 of the competition would be evaluated based upon a technical capability coding submission and price evaluation. *Id.*

During Phase 1 of the evaluation process, quoters provided a seven-minute technical strategy video and a business volume that supplied pricing for personnel and other services based upon the General Services Administration's ("GSA") supply schedule staffing and labor rates. *Id.* at 83-85. Quoters provided responses to the following five questions ("RFQ Question") in their technical strategy video.

1.  What services would the Offeror tackle first and why?

2.  Your approach to an urgent transition to the microservice-based architecture?

3.  How does the Offeror's strategy ensure that a service in the legacy ESB environment will remain operational through its service transition to the new microservice based environment?

4.  During the life of this contract USCIS is likely to receive new immigration mandates (e.g. changes to H1B). Would your solution in response to the new mandate be built on the legacy system, built on the new microservice architecture, or a combination of both?

5.  Management and staffing approach to include:

    a.  Proposed number of teams, team structure, and location of performance.

    b.  HR process to recruit and retain qualified staff, to include scaling for surge/optional tasks.

*Id.* at 83-84.

The RFQ also provides that each RFQ Question and related considerations "are of equal importance." *Id.* at 83. In addition, the RFQ provides that each technical strategy video would be evaluated for "feasibility of the approach" and the "approach to an urgent transition to microservices," which would be equally weighted. *Id.*

With regards to the evaluation of the technical strategy videos, the RFQ further provides that each technical strategy video would be awarded a technical rating of either "outstanding," "good," "acceptable," or "unacceptable."[2] *Id.* at 85.

---

[2] The RFQ defines an "outstanding" rating as: the "[p]roposal demonstrates a superior understanding of the requirements. Their approach significantly exceeds the solicitation requirements. Proposal has multiple strengths that benefit the Government. Proposal has no significant weaknesses, or deficiencies.

Of particular relevance to this dispute, the RFQ provides that a proposal is "acceptable" if it:

> [D]emonstrates an understanding of the requirement and an approach that meets the solicitation requirements.  Proposal may contain weaknesses or may have no strengths, but risk of unsuccessful performance is low to moderate.  The proposal may not contain any deficiencies.  The proposal may not contain multiple significant weaknesses that appreciably increase risk of successful performance.

*Id.*  The RFQ also provides that the technical ratings for each proposal would be comprised of sub-ratings tailored to each quoters' responses to the aforementioned five questions, including "strength," "weakness," "significant weakness," and "deficiency."  *Id.* at 83-86.  In this regard, the RFQ defines a "strength" as "[a]n element of a proposal which exceeds a requirement of the solicitation in a beneficial way to the Government."  *Id.* at 85.  The RFQ also defines a "weakness" as "[a] flaw in a proposal that increases the chance of unsuccessful performance." *Id.*

Lastly, with regards to the evaluation of the business volume, the RFQ provides that each quoters' proposed prices would be "evaluated for price reasonableness, consistency and arithmetic accuracy."  *Id.*

## 2.       The Phase 1 Evaluation Process

The USCIS received timely responsive Phase 1 proposals from 21 quoters, including CWS.  AR Tab 29 at 632.  After receiving these proposals, the USCIS determined that all of the quoters submitted reasonable business volumes that complied with the GSA rates.  *Id.*  And so, the USCIS evaluated each quoters' technical strategy video and awarded each Phase 1 proposal a technical rating.  *Id.*; *see also* AR Tab 5 at 85.  The chart below shows the technical ratings that the USCIS awarded to the five quoters that advanced to Phase 2 of the procurement and the strengths and weaknesses assigned to each proposal:

---

Risk of unsuccessful performance is very low."  AR Tab 5 at 85.  The RFQ also defines a "good" rating as:  the "[p]roposal demonstrates a good understanding of the requirements and an approach that exceeds the solicitation requirements.  Proposal has strengths that benefit the Government.  The proposal may contain weaknesses, but cannot contain any deficiencies or significant weaknesses.  Risk of unsuccessful performance is low."  *Id.*

| Offeror | Technical Rating | Strengths | Weaknesses | Significant Weaknesses | Deficiencies |
|---|---|---|---|---|---|
| Alethix | Outstanding | 5 | 0 | 0 | 0 |
| EDC Consulting | Outstanding | 4 | 1 | 0 | 0 |
| Flashy EGIS CTA | Outstanding | 4 | 1 | 0 | 0 |
| Soft Tech | Outstanding | 4 | 1 | 0 | 0 |
| Simon Computing | Good | 2 | 0 | 0 | 0 |

AR Tab 31 at 643-667.  As shown above, each quoter that advanced to Phase 2 of the competition submitted a Phase 1 proposal that received either an "outstanding," or a "good" rating.  *Id.*

With regards to the remaining quoters, the chart below shows the technical ratings that the USCIS awarded to these quoters and the strengths and weaknesses assigned to each quoters' Phase 1 proposal.

| Offeror | Technical Rating | Strengths | Weaknesses | Significant Weaknesses | Deficiencies |
|---|---|---|---|---|---|
| Agile Trailblazers | Acceptable | 4 | 3 | 0 | 0 |
| ArdentMC | Acceptable | 2 | 3 | 1 | 0 |
| BCBM | Acceptable | 1 | 3 | 0 | 0 |
| CWS | Acceptable | 1 | 5 | 0 | 0 |
| Harmonia Holdings Group | Acceptable | 1 | 3 | 0 | 0 |
| IntegrityOne Partners | Acceptable | 2 | 4 | 0 | 0 |
| Karsun Solutions | Acceptable | 2 | 4 | 0 | 0 |
| Mastermind Media | Acceptable | 2 | 1 | 0 | 0 |
| NARTech | Acceptable | 1 | 3 | 0 | 0 |
| Navitas | Acceptable | 4 | 3 | 0 | 0 |
| VariQ | Acceptable | 2 | 1 | 0 | 0 |
| Wexler Technical Solutions | Acceptable | 1 | 2 | 0 | 0 |
| Xcelerate Solutions | Acceptable | 1 | 1 | 1 | 0 |
| Zolon Tech | Acceptable | 2 | 4 | 0 | 0 |

| Dan Solutions Inc. | Unacceptable | 0 | 0 | 0 | 1 |
| Optimoz | Unacceptable | 0 | 5 | 0 | 0 |

*Id.* Most notably, the USCIS rated CWS's Phase 1 proposal as technically "acceptable" and the agency assigned one strength and five weaknesses to the proposal. *Id.* at 648-50.

With regards to the strength assigned to CWS's proposal, the USCIS assigned a strength based upon CWS's response to RFQ Question 4, which asked how the quoters' proposed solution would respond to new immigration mandates. *Id.* at 648; AR Tab 5 at 83. In this regard, the USCIS found that:

> [CWS] gives a clear and feasible approach to responding to ongoing mandates during the transition. Their response includes comparing the, "value and effort of migrating the new functionality vs the additional technical debt incurred by making the change in the legacy system." If a legacy solution is needed, it will be built along with a new microservice to avoid impacting deadlines. Additionally, the Quoter's response discusses how their existing knowledge of legacy systems will reduce the overall development time of new mandates.

AR Tab 31 at 648.

The USCIS also assigned five weaknesses to CWS's proposal. *Id.* First, the USCIS assigned a weakness based upon CWS's response to RFQ Question 1, which asked what services CWS would tackle first. *Id.*; AR Tab 5 at 83. During the evaluation of CWS's proposal, the USCIS found that:

> [CWS] proposes to first tackle the [Person Centric Query System ("PCQS")] service because it is the "longest pole in the tent" and because it would offer the most business value by quickly supporting eProcessing. The problem with their approach is that if they tackle PCQS first and don't work on other services in parallel, they will not meet the Sep 2020 deadline for migrating off of TIBCO. The Quoter mentions in MM 1:41 the services that they will tackle but there is no mention of a parallel approach for those services being worked on by different teams simultaneously. Also, the Quoter does not discuss the timing impact of the PCQS user interface and how it is not comprised of the TIBCO technology and therefore the PCQS user interface could be migrated after Sep 2020. Additionally, the impact of the Quoter's approach depends on PCQS being the most valuable service to eProcessing. Their approach displays a lack of understanding because PCQS is just a query system and there is no data orchestration or data translation required like other services. The Quoter's discussion of PCQS's

business value to eProcessing will not adequately help meet the government's goal of a speedy migration away from TIBCO.

AR Tab 31 at 648-49.  Second, the USCIS assigned a weakness to CWS's proposal based upon the response to RFQ Question 2, which asked quoters to explain their approach to the transition to a microservice based architecture.  *Id.* at 649; AR Tab 5 at 83.  During the evaluation, the USCIS found that:

> [CWS] did not adequately discuss their proposed pipeline.  The Quoter discussed high level concepts with inadequate details.  Their proposed 3-step process outlined for Q2 states:
>
> > Step 1: Establish core foundational interfaces.
> > Step 2: Establish replacement microservices.
> > Step 3: Transition full operational workload.
>
> Establishing a core fundamental interfaces is not feasible.  In order to achieve the September 2020 deadline the government does not need to establish a core fundamental interfaces.  A more feasible approach would be to use the current interfaces as a facade and rebuild the business processes behind the interfaces to get us off TIBCO by September 2020.  For steps 2 & 3 their approach is vague and does not give a detail around how Steps 2 and 3 will be planned and executed.  Additionally, the Quoter proposed establishing replacement microservices and this is not a feasible approach because not all current Business Works business and logic can be converted to microservices.

AR Tab 31 at 649.

In addition, the USCIS assigned two weaknesses to CWS's proposal based upon the response to RFQ Question 3, which asked how quoters would ensure that a service in the legacy ESB environment will remain operational through the transition to the new microservice based environment.  *Id.*; AR Tab 5 at 83.  The USCIS found that:

> [CWS] proposes a transition strategy to microservices to ensure that the ESB remains operational through transition.  The problem with their approach is that the Quoter fails to adequately discuss TIBCO and the usage of their TIBCO SMEs during migration to convert TIBCO base code.  The government's migration from TIBCO and the risks involved were not adequately addressed by the Quoter and this makes the Quoter's approach less feasible.

AR Tab 31 at 649.  The USCIS also found that:

[CWS] discusses migrating legacy services to [Amazon Web Services] to achieve cost savings and other benefits. This approach lacks details, will negatively impact the speed of migration away from TIBCO, and is not feasible for several reasons . . . .

The Quoter's approach of moving current services to AWS will waste time, resources, and money. For these reasons, the Quoter's approach will not effectively contribute to urgently moving USCIS to a microservices based architecture.

*Id.* at 649-650.

Lastly, the USCIS assigned a fifth and final weakness to CWS's proposal based upon the response to RFQ Question 5, which addresses CWS's management and staffing approach. *Id.* at 650; AR Tab 5 at 85. Specifically, the USCIS found that:

[CWS's] recruiting approach is inadequate and not feasible. At MM 6:46, they propose to simply rely on having 4 recruiters and mentions the existence of generic web-based tools. It doesn't effectively address how they would find, screen, and hire the multitude of highly technical positions listed on the previous slide at MM 6:40. Quoter did not mention recruiting for TIBCO skilled staff.

AR Tab 31 at 650. And so, the USCIS determined that:

With the exception of their response to question 4, the Quoter's responses were missing the details needed to form a feasible approach. Along with the lack of detail, their responses proposed approaches that would negatively impact an urgent transition away from TIBCO to a microservices based architecture by 2020. Lastly, they repeatedly cited their current experience and work supporting USCIS but their Q3 response lacked TIBCO expertise and their Q5 response did not address recruiting TIBCO expertise.

*Id.* at 648. And so, the USCIS rated CWS's proposal technically "acceptable." *Id.*

After completing the evaluation of Phase 1 proposals for all 21 quoters, the USCIS determined that five responsive proposals would advance to Phase 2 of the competition. AR Tab 29 at 636. On May 22, 2019, the USCIS notified the five successful quoters, including Alethix, that they had advanced to Phase 2 of the competition. AR Tab 15 at 415. On the same date, the USCIS notified the remaining quoters, including CWS, of the fact that they would not advance to Phase 2 of the competition. *Id.*

**3.      CWS's GAO Protest And Contract Award**

On June 3, 2019, CWS filed a timely pre-award protest of the USCIS's decision to exclude its proposal from the competition for the ESB Contract with the United States Government Accountability Office ("GAO").  AR Tab 1 at 2.  On September 6, 2019, the GAO denied CWS's protest.  *See generally Computer World Services*, B-417634, 2019 WL 5390621 (Comp. Gen. Sept. 6, 2019); AR Tabs 18, 19.

On September 26, 2019, the USCIS awarded the ESB Contract to Alethix.  Pl. Mem. at 7; Def. Mot. at 12.  Thereafter, CWS commenced this post-award bid protest action on November 8, 2019.  *See generally* Compl.

**B.      Procedural Background**

CWS commenced this post-award bid protest matter on November 8, 2019.  *Id.*  On the same date, CWS filed motions for a temporary restraining order and for a preliminary injunction. *See generally* Pl. Mot. for TRO/Prelim. Inj.

On November 12, 2019, Alethix filed an unopposed motion to intervene, which the Court granted on that same date.  *See generally* Mot. to Intervene; Scheduling Order, dated Nov. 12, 2019.  On the same date, the Court entered a Protective Order in this matter.  *See generally* Protective Order.

On November 27, 2019, the government filed the administrative record.  *See generally* AR.  On December 13, 2019, CWS filed a motion for judgment upon the administrative record and memorandum in support thereof.  *See generally* Pl. Mot.; Pl. Mem.  On December 24, 2019, the government filed a response and opposition to CWS's motion for judgment upon the administrative record, a motion to dismiss and a cross-motion for judgment upon the administrative record.  *See generally* Def. Mot.  On the same date, Alethix filed a response and opposition to CWS's motion for judgment upon the administrative record and cross-motion for judgment upon the administrative record.  *See generally* Def.-Int. Mot.

On January 10, 2020, CWS filed a response and opposition to the government's motion to dismiss and the government's and Alethix's respective cross-motions for judgment upon the administrative record, and a reply in support of its motion for judgment upon the administrative

record.  *See generally* Pl. Resp.  On January 17, 2020, the government and Alethix filed their respective reply briefs.  *See generally* Def. Reply; Def.-Int. Reply.

These matters having been fully briefed, the Court resolves the pending motions.

## III.   LEGAL STANDARDS

### A.   Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1).  This Court reviews agency actions that are at issue in a bid protest matter under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard.  *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the APA).  Under this standard, an "'award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'"  *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

In this regard, the United States Court of Appeals for the Federal Circuit has explained that, "[w]hen a challenge is brought on the first ground, the test is 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.'"  *Id.* (quoting *Impresa*, 238 F.3d at 1332-33).  "'When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.'"  *Id.* (quoting *Impresa*, 238 F.3d at 1333).  In addition, when reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977).  "The [C]ourt should not substitute its judgment for that of a procuring agency . . . ."  *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997).  And so, "[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis

or in violation of applicable procurement law." *Info. Tech. & Applics. Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) (citation omitted).

The Court's standard of review "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "'a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion.'" *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). But, if "the agency 'entirely fail[s] to consider an important aspect of the problem, [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency,'" then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

## B.     RCFC 12(b)(1)

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all factual allegations in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1). But, a plaintiff bears the burden of establishing subject-matter jurisdiction, and it must do so by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Servs.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006); *see* RCFC 12(h)(3).

## C.     Judgment Upon The Administrative Record

Generally, RCFC 52.1 limits this Court's review of an agency's procurement decision to the administrative record. RCFC 52.1; *see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) ("'[T]he focal point for judicial review should be the administrative record already in existence.'") (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). And so, unlike a summary judgment motion brought pursuant to RCFC 56, "the existence of genuine issues of material fact does not preclude judgment on the administrative record" under RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011) (citations omitted); RCFC

52.1.  Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record."  *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citation omitted).

### D.      Injunctive Relief

Lastly, under its bid protest jurisdiction, the Court "may award any relief [it] considers proper, including declaratory and injunctive relief."  28 U.S.C. § 1491(b)(2); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009).  In deciding whether to issue a permanent injunction, the Court "considers:  (1) whether . . . the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief."  *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (citing *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 546 n.12 (1987) ("The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.")); *see also Centech Grp., Inc.*, 554 F.3d at 1037.  In this regard, the United States Court of Appeals for the Federal Circuit has held that:

> No one factor, taken individually, is necessarily dispositive.  If a preliminary injunction is granted by the trial court, the weakness of the showing regarding one factor may be overborne by the strength of the others.  If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.

*FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993) (citations omitted).

A plaintiff who cannot demonstrate actual success upon the merits cannot prevail upon a motion for preliminary injunctive relief.  *Cf. Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd*., 357 F.3d 1319, 1324–25 (Fed. Cir. 2004) (finding that a plaintiff who cannot demonstrate a likelihood of success upon the merits cannot prevail upon its motion for preliminary injunctive relief).  This Court has also found success upon the merits to be "the most important factor for a court to consider when deciding whether to issue injunctive relief."  *Dellew Corp. v. United States*, 108 Fed. Cl. 357, 369 (2012) (citing *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d

1308, 1312 (Fed. Cir. 2007)). But, while success upon the merits is necessary, it is not sufficient alone for a plaintiff to establish an entitlement to injunctive relief. *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) ("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citations omitted)).

## IV.    LEGAL ANALYSIS

The government has moved to dismiss this matter for lack of subject-matter jurisdiction, upon the ground that CWS has waived the right to bring its claims by commencing this bid protest litigation after the USCIS awarded the ESB Contract. Def. Mot. at 14-17. In its response and opposition to the government's motion to dismiss, CWS counters that it has preserved the ability to bring this action by filing a timely pre-award protest of the USCIS's evaluation process for the ESB Contract before the GAO. Pl. Resp. at 1-5. And so, CWS requests that the Court deny the government's motion to dismiss. *Id.* at 5.

The parties have also filed cross-motions for judgment upon the administrative record on the issues of: (1) whether the USCIS properly evaluated CWS's proposal and (2) whether CWS has been prejudiced by the USCIS's alleged evaluation errors. Pl. Mem. at 9-30; Def. Mot. at 17-30; Def.-Int. Mot. at 10-35. In its motion for judgment upon the administrative record, CWS argues that the USCIS improperly assigned multiple weaknesses and failed to assign warranted strengths to its Phase 1 proposal. Pl. Mem. at 9-28. CWS also argues that the USCIS treated quoters unequally during the evaluation process for the ESB Contract. *Id.* at 12-14, 21-24. And so, CWS requests that the Court declare the USCIS's evaluation process—and decision to eliminate CWS from the competition for the ESB Contract—to be arbitrary, capricious and contrary to law. *Id.* at 1.

The government and Alethix counter in their respective cross-motions for judgment upon the administrative record that the USCIS properly evaluated CWS's Phase 1 proposal, consistent with the RFQ and applicable law. Def. Mot. at 17-30; Def.-Int. Mot. at 10-35. And so, they request that the Court deny CWS's motion for judgment upon the administrative record, grant their respective cross-motions and dismiss this matter. Def. Mot. at 32; Def.-Int. Mot. at 37. Lastly, CWS has filed motions for a temporary restraining order and for a preliminary injunction. *See generally* Pl. Mot. for TRO/Prelim. Inj.

For the reasons set forth below, CWS has not waived the right to bring this post-award bid protest action.  But, CWS has not shown that it has been prejudiced by the USCIS's alleged evaluation errors in connection with the competition for the award of the ESB Contract.  In addition, the record evidence shows that the USCIS reasonably evaluated CWS's Phase 1 proposal, consistent with the terms of the RFQ and applicable law.  And so, for the reasons that follow, the Court:  (1) **DENIES** the government's motion to dismiss; (2) **DENIES** CWS's motion for judgment upon the administrative record; (3) **GRANTS** the government's and Alethix's cross-motions for judgment upon the administrative record; (4) **DENIES** CWS's motions for a temporary restraining order and for a preliminary injunction; and (5) **DISMISSES** the complaint.

### A.        Dismissal Of CWS's Protest Is Not Warranted

As an initial matter, the Court is not persuaded by the government's argument that dismissal of this matter is warranted, because CWS has waived the right to bring its claims.  The government argues that CWS waived its challenge to the USCIS's evaluation process and the agency's decision to exclude CWS from the competition for the ESB Contract, because CWS commenced this litigation after the award of the ESB Contract.  Def. Mot. at 14-17.  Specifically, the government contends that CWS unduly delayed this bid protest litigation, by commencing this action two months after losing a similar protest before the GAO and after the award of the ESB Contract.  *Id.* at 16.

To support its waiver argument, the government relies upon the Federal Circuit's decisions in *Blue & Gold Fleet, L.P. v. United States* and *COMINT Systems Corp. v. United States*.  *Id.* at 14.  In *Blue & Gold*, the Federal Circuit held that:

> [A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to waive the same objection subsequently in a bid protest action in the Court of Federal Claims.

*Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007).  More recently, the Federal Circuit revisited this waiver rule in *COMINT* and held that a protestor that did not raise an objection to a solicitation before contract award, "failed to preserve its right to challenge the solicitation."  *COMINT Systems Corp. v. United States*, 700 F.3d 1377, 1379 (Fed. Cir. 2012).

Notably, in *COMINT*, the protestor challenged an amendment to a solicitation that was issued after the close of the bidding process, but before contract award. *Id.* at 1382. As a result, the protestor did not have an opportunity to challenge the amendment to the solicitation in that case prior to the close of the bidding process. *Id.* The Federal Circuit concluded that the protestor waived the right to challenge the amendment to the solicitation at issue, because the protestor did not raise this challenge until after contract award—despite having the opportunity to do so. *Id.* ("[W]e think the reasoning of *Blue & Gold* applies to all situations in which the protesting party had the opportunity to challenge a solicitation before the award and failed to do so."). And so, the Court reads *COMINT* to stand for the proposition that a challenge to the terms of a solicitation is waived unless such a protest is brought before the award of the contract if the protestor has the opportunity to do so.

The government's reliance upon *Blue & Gold* and *COMINT* to dismiss the instant bid protest is, however, misplaced. In this case, CWS does not challenge the terms of the RFQ for the ESB Contract. *See* Compl. at ¶ 1. Rather, CWS objects to the USCIS's evaluation process and decision to exclude CWS from the competition for the award of the ESB Contract. *Id.* Because the present case does not involve a challenge to the terms of a solicitation, the Court declines to extend the waiver rule under *Blue & Gold* and its progeny to this case.[3] And so, the Court **DENIES** the government's motion to dismiss.

**B.    CWS's Claims Lack Support In The Administrative Record**

Turning to the merits of CWS's bid protest claims, a careful review of the administrative record shows that CWS's challenge to the evaluation process for the ESB Contract, and the USCIS's decision to exclude CWS from the competition for that contract, lacks evidentiary support.

**1.    CWS Has Not Shown Prejudice**

First, to the extent that CWS can demonstrate that the evaluation errors that it alleges occurred, CWS has not shown that it has been prejudiced by these errors. To succeed in this bid

---

[3] As the government correctly observes in its motion to dismiss, CWS waited several weeks after the USCIS awarded the ESB Contract to Alethix to bring this action. Def. Mot. at 16. But, the Court is not persuaded that this delay requires the Court to dismiss CWS's claims under *Blue & Gold* and *COMINT*.

protest dispute, CWS must show that there was a substantial chance that it would have been awarded the ESB Contract, absent the USCIS's alleged evaluation errors. *Bannum, Inc. v. United States*, 404 F.3d. 1346, 1353 (Fed. Cir. 2005); *see also Lyon Shipyard Co. v. United States*, 113 Fed. Cl. 347, 354 (2013) (holding that a protestor must show agency action in violation of a procurement regulation and significant prejudice as a result of such error). But, CWS has not made such a showing in this case for several reasons.

As a preliminary matter, the administrative record shows that CWS's proposal received a technical rating that was significantly lower than the quoters that advanced to Phase 2 of the competition. *See* AR Tab 31 at 643-667. In this regard, the record evidence shows that CWS's Phase 1 proposal received an overall technical rating of "acceptable," indicating that CWS met the RFQ's requirements. *Id.* at 648; *see also* AR Tab 5 at 85. By comparison, the administrative record shows that all of the quoters that advanced to Phase 2 of the competition received higher overall technical ratings of either "good" or "outstanding," indicating that these quoters either exceeded or significantly exceeded the RFQ's requirements.[4] AR Tab 31 at 666-66; *see also* AR Tab 5 at 85. The record evidence also shows that CWS's Phase 1 proposal received significantly fewer strengths than were awarded to all of the Phase 1 proposals that advanced to Phase 2 of the procurement. *Compare* AR Tab 31 at 648-650, *with* AR Tab 31 at 660-66. Notably, the USCIS assigned one strength to CWS's Phase 1 proposal. *Id.* at 648-650. But, all of the quoters that advanced to Phase 2 of the competition for the ESB Contract submitted Phase 1 proposals that received two or more technical strengths. *See id.* at 660-66.

---

[4] The chart below shows the technical ratings for the quoters that advanced to Phase 2 of the competition for the ESB Contract.

| Offeror | Technical Rating | Strengths | Weaknesses | Significant Weaknesses | Deficiencies |
|---|---|---|---|---|---|
| Alethix | Outstanding | 5 | 0 | 0 | 0 |
| EDC Consulting | Outstanding | 4 | 1 | 0 | 0 |
| Flashy EGIS CTA | Outstanding | 4 | 1 | 0 | 0 |
| Soft Tech | Outstanding | 4 | 1 | 0 | 0 |
| Simon Computing | Good | 2 | 0 | 0 | 0 |

AR Tab 31 at 660-66.

The administrative record also shows that CWS's Phase 1 proposal was assigned more weaknesses than any other Phase 1 proposal that received an overall technical rating of "acceptable." *Id.* at 645-660 (showing that only CWS and Optimoz—whose proposal received a technical rating of "unacceptable"—were assigned five technical weaknesses). In fact, the only other Phase 1 proposal to be assigned as many weaknesses as CWS's proposal was deemed to be technically "unacceptable" by the USCIS. *Id.* at 666-67.

Indeed, as the government correctly observes in its cross-motion, CWS's overall technical rating was lower than the technical ratings for all but one of the 21 quoters that competed during Phase 1 of the competition. Def. Mot. at 29; *see also* AR Tab 31 at 643-667. Given this, CWS has not shown that it would have advanced to Phase 2 of the competition, or that it would have had a substantial chance of being awarded the ESB Contract, absent the USCIS's alleged evaluation errors. *Bannum, Inc.*, 404 F.3d at 1353.

### 2.    The USCIS Reasonably Evaluated CWS's Phase 1 Proposal

A careful review of the administrative record also shows that CWS's bid protest claims lack evidentiary support.

### i.    The USCIS Reasonably Assigned Weaknesses To CWS's Proposal

First, the record evidence shows that the USCIS had a rational basis for assigning each of the five technical weaknesses ascribed to CWS's Phase 1 proposal. CWS first objects to the USCIS's decision to assign a weakness to its proposal because CWS did not state that it would work on several services in parallel during the performance of the ESB Contract. Pl. Mem. at 11. But, the administrative record shows that the USCIS has a rational basis for assigning this weakness. Specifically, the administrative record shows that CWS proposed first tackling the Person Centric Query System ("PCQS") service during the performance of the ESB Contract and that the USCIS had concerns that such a strategy would result in CWS failing to meet the deadline for migrating off TIBCO. AR Tab 31 at 648. A review of the administrative record also shows that CWS did not state in its Phase 1 proposal that it would work on PCQS in parallel

with other services.  Pl. Ex. 1 at 3-4.  Given this, the record evidence shows that the USCIS had a rational basis for assigning the subject weakness.[5]

CWS's objection to the weakness assigned to its proposal for the response to RFQ Question 2 is also unsubstantiated.  CWS argues that the USCIS erred by assigning a weakness to its proposal based upon criteria that should have been used to evaluate its proposed pipeline during Phase 2 of the evaluation process.  Pl. Mem. at 14-15; AR Tab 31 at 649.  But, the record evidence makes clear that the USCIS did not rely upon improper evaluation criteria to evaluate CWS's response to RFQ Question 2.  AR Tab 31 at 649.

The administrative record shows that RFQ Question 2 asked each quoter to provide information about its approach to an urgent transition to microservice based architecture.  AR Tab 5 at 83.  The administrative record also shows that the USCIS assigned a weakness to CWS's proposal, because CWS failed to "adequately discuss their proposed pipeline. . . . and [CWS] discussed high level concepts with inadequate details."  AR Tab 31 at 649.

While CWS correctly observes that the RFQ requires that the USCIS evaluate CWS's ability to "develop and integrate two microservices" and its diagram of a proposed pipeline during Phase 2 of the competition, the record evidence does not show that the USCIS applied this criteria during the evaluation of CWS's Phase 1 proposal.  Pl. Mem. at 15 (citing AR Tab 5 at 79); *see also* AR Tab 5 at 80; AR Tab 31 at 649.  Rather, the record evidence shows that the USCIS assigned the subject weakness due to an inadequate discussion of CWS's proposed pipeline and the absence of detail with regards to CWS's response to RFQ Question 2.  AR Tab 31 at 649.  Indeed, the USCIS does not mention the development and integration of two microservices, or CWS's diagram of a proposed pipeline, in its evaluation of CWS's Phase 1

---

[5] CWS's claim that the USCIS treated it differently than other quoters with regards to the evaluation of RFQ Question 1 is also unsubstantiated.  CWS correctly observes that the USCIS did not assign a weakness based upon the response to RFQ Question 1 to the Phase 1 proposals submitted by Soft Tech, EDC Consulting, VariQ and Karsun Solutions, despite the fact that these quoters did not explicitly state that they would first tackle PCQS services in parallel with other services.  Pl. Mem. at 12.  But, a review of the proposals submitted by these other quoters reveals that Soft Tech and EDC Consulting did propose first tackling PCQS along with one other service.  AR Tab 23 at 459 (providing the links to Soft Tech and EDC Consulting's proposal videos).  The administrative record also shows that the USCIS assigned two weaknesses to Karsun Solution's proposal for its strategy regarding PCQS and that VariQ did not receive a strength or a weakness for its strategy regarding PCQS.  AR Tab 31 at 653, 657.  Given this, CWS's unequal treatment claim lacks evidentiary support.

proposal. *Id.* Given this, CWS has not shown that the USCIS's decision to assign this weakness was inconsistent with the requirements of the RFQ.[6]

CWS's challenges to the two weaknesses assigned to its proposal for the response to RFQ Question 3 are equally unavailing. The administrative record shows that RFQ Question 3 asked how each quoter would ensure that the legacy service ESB environment will remain operational during the transition to the new microservice based environment. AR Tab 5 at 83. The administrative record also shows that the USCIS assigned two weaknesses to CWS's proposal based upon the response to this question. AR Tab 31 at 649-50. First, the USCIS found that CWS "fail[ed] to adequately discuss TIBCO and the usage of their TIBCO [Subject Matter Experts] during migration to convert TIBCO base code." *Id.* at 649. Second, the USCIS found that CWS's approach to migrating legacy services to Amazon Web Services to achieve cost savings "lacks details, will negatively impact the speed of migration away from TIBCO, and is not feasible for several reasons." *Id.*

Again, the record evidence reveals that the USCIS had a rational basis for assigning these weaknesses. With regards to the USCIS's concern about the absence of any discussion of TIBCO in CWS's response to RFQ Question 3, CWS acknowledges that it did not mention TIBCO in this response and CWS does not dispute that TIBCO software is the primary software that is a part of the legacy ESB environment. Pl. Mem. at 17; *see also* Pl. Ex. 1 at 6-7 (showing no mention of TIBCO or TIBCO Subject Matter Experts); AR Tab 15 at 414. CWS's argument that the USCIS improperly assigned a weakness to its proposal because it did not propose migrating all legacy services to Amazon Web Services before beginning conversion efforts is also unpersuasive. Pl. Mem. at 18-19. CWS's argument is belied by the plain language of its Phase 1 proposal, which states that "[m]igrating legacy services to [Amazon Web Services] will support the ease of the conversion to microservices, increase performance support levels, and provide budget savings in pursuit of USCIS priorities." Pl. Ex. 1 at 7. And so, the record evidence shows that the USCIS reasonably assigned a weakness due to the lack of detail regarding CWS's approach to migrating legacy services to Amazon Web Services.

---

[6] CWS's claim that the aforementioned weakness was not warranted because CWS did not propose building a new core user interface in its response to RFQ Question 2 is also belied by the plain language of CWS's proposal. Pl. Mem. at 15. CWS's Phase 1 proposal states that "Step 1 is to establish core foundational interfaces." Pl. Ex. 1 at 5.

Lastly, CWS's challenge to the weakness assigned to its proposal for the response to RFQ Question 5 is similarly misguided.  The administrative record shows that RFQ Question 5 asked quoters to describe their management and staffing approach.  AR Tab 5 at 84.  The administrative record also shows that the USCIS assigned a weakness to CWS's proposal for the response to this question, because it found CWS's recruiting approach to be "inadequate and not feasible."  AR Tab 31 at 650.  Again, the record evidence makes clear that the USCIS had a rational basis for assigning this weakness.

CWS argues that its status as the incumbent contractor for another contract to maintain the legacy system for the USCIS sufficiently demonstrates that CWS could recruit qualified staff.  Pl. Mem. at 20-21.  But, as the government correctly observes in its cross-motion, the ESB Contract involves modernizing and transitioning the ESB legacy system.  Def. Mot. at 27-28.  And so, the ESB Contract differs in a material way from CWS's previous contract work with the USCIS.

A review of CWS's proposal also reveals that CWS did not explain how it would utilize the recruiters that it proposed hiring to "find, screen, and hire the multitude of highly technical positions."  Pl. Ex. 1 at 8-9; AR Tab 31 at 650.  Nor does CWS explain how it would tailor its management and staffing approach to meet the requirements of the ESB Contract.  Pl. Ex. 1 at 8-9.  Given this, CWS simply has not shown that the USCIS's decision to assign the subject weakness was irrational.  And so, the Court finds no basis for setting aside the USCIS's evaluation decision.[7]

Because the record evidence shows that the USCIS had a rational basis for assigning the five weaknesses ascribed to CWS's Phase 1 proposal, CWS has not prevailed upon its claims.

---

[7] CWS also has not shown that the USCIS treated quoters unequally with regards to the evaluation of RFQ Question 5.  CWS argues that the USCIS did not assign a similar weakness to other quoters' proposals, despite the fact that these other quoters did not specifically explain how they would recruit TIBCO-skilled staff to perform the ESB Contract.  Pl. Mem. at 21-23.  But, the record evidence shows that CWS relied almost exclusively upon its past experience as the incumbent contractor for the BEST II contract in its Phase 1 proposal to demonstrate its management and staffing approach.  Pl. Ex. 1 at 8-9.  But, other quoters did not take this particular approach.  *See generally* AR Tab 23 (showing links to other quoters' technical strategy videos).  And so, CWS has not shown that the USCIS treated CWS unequally or unfairly during the evaluation of RFQ Question 5.

ii.     **The USCIS Reasonably
Assigned Strengths To CWS's Proposal**

CWS also has not shown that the USCIS erred by declining to assign additional technical strengths to its Phase 1 proposal.  CWS argues that the USCIS did not fully credit it for relevant experience as the incumbent contractor for the BEST II contract—a prior contract to provide engineering and maintenance for TIBCO-based ESB services—to the USCIS.  Pl. Mem. at 5, 24-26.  But, the administrative record shows that CWS did in fact receive a strength for its "existing knowledge of legacy services."  AR Tab 31 at 648.  As discussed above, and further explained by the government in its cross-motion, CWS's prior experience as an incumbent contractor with managing TIBCO is not the same kind of experience needed to transition off TIBCO-based services to microservices based in the cloud.  Def. Mot. at 27-28.  Given this, CWS has not shown that the USCIS's evaluation decision lacked a rational basis.

CWS also argues that it should have received two additional strengths for having expert staff "already . . . on hand," and for frontloading the effort to "provide [a] greater number of teams and resources in [the] beginning to meet urgent TIBCO transition . . . ."  Pl. Mem. at 27-28; Pl. Ex. 2 at 27.  But, the government correctly observes that CWS did not address such staffing strengths in it Phase 1 proposal.  Def. Mot. at 28 ("CWS's prior experience might be instructive, but it does not answer whether its personnel can do the work necessary for this new contract, or how it would recruit people to complete the work.  CWS made no serious attempt to address the issue.").  In fact, CWS simply states in the Phase 1 proposal that it has 25 years of proven recruiting experience.  *See* Pl. Ex. 1 at 9.  And so, CWS also has not shown that the USCIS irrationally declined to assign additional strengths to its Phase 1 proposal based upon CWS's staffing resources and experience.

C.     **CWS Is Not Entitled To Injunctive Relief**

As a final matter, CWS is not entitled to the injunctive relief that it seeks in this case. CWS seeks to enjoin the USCIS from proceeding with performance on the ESB Contract.  *See generally* Pl. Mot. for TRO/Prelim. Inj.  But, a plaintiff who cannot demonstrate success upon the merits cannot prevail on a motion for permanent injunctive relief.  *Argencord Mach. & Equip., Inc. v. United States*, 68 Fed. Cl. 167, 176 (2005).  In this case, CWS has not succeeded

upon the merits of any of its claims challenging the USCIS's evaluation process for the ESB Contract.  And so, the Court must **DENY** CWS's request for injunctive relief.

## V.    CONCLUSION

In sum, the government has not shown that CWS waived the right to bring this post-award bid protest.  But, CWS also has not shown that it was prejudiced by the evaluation errors alleged in this case.  In addition, the administrative record makes clear that the USCIS conducted a reasonable evaluation during Phase 1 of the competition for the ESB Contract, consistent with the terms of the RFQ and applicable law.  And so, for the foregoing reasons, the Court:

1. **DENIES** CWS's motion for judgment upon the administrative record;

2. **DENIES** the government's motion to dismiss;

3. **GRANTS** the government's and Alethix's cross-motions for judgment upon the administrative record;

4. **DENIES** CWS's motions for a temporary restraining order and for a preliminary injunction; and

5. **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on November 12, 2019.  This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication.  The parties shall **FILE** a joint status report identifying the

information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **April 28, 2020**.

      **IT IS SO ORDERED.**


                    s/ Lydia Kay Griggsby

                    LYDIA KAY GRIGGSBY

                    Judge